UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELECTRONIC FRONTIER FOUNDATION,

        Plaintiff,               No. C 12-5580 PJH

      v.                  **ORDER RE CROSS-MOTIONS FOR**
                                    **SUMMARY JUDGMENT**

DEPT OF HOMELAND SECURITY,

        Defendant.

_____/

        Defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment came on for hearing before this court on January 15, 2014.  Plaintiff Electronic Frontier Foundation ("plaintiff" or "EFF") appeared through its counsel, Jennifer Lynch. Defendant Department of Homeland Security ("defendant" or "DHS") appeared through its counsel, Jennie Kneedler.  Having read the papers filed in conjunction with the motions and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part defendant's motion for summary judgment, and GRANTS in part and DENIES in part plaintiff's cross-motion for summary judgment as follows.

## BACKGROUND

        This case arises under the Freedom of Information Act ("FOIA").  On June 25, 2012, plaintiff EFF made a request to U.S. Customs & Border Protection ("CBP")[1] for documents related to CBP's use of unmanned aircraft systems ("UAS," also referred to as "drones") to assist the operations or activities of other agencies.   Specifically, EFF requested the following three categories of information:

_____

[1]CBP is a component of defendant DHS.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

(1) CBP and/or DHS policies or procedures for responding to requests from other agencies (including agencies at the federal, state, and local level) for assistance involving the use of CBP's Predator drones;

(2) records or logs of CBP drone flights to assist in any operation or activity of another agency (including foreign, federal, state, and local government agencies), including records or logs that detail when the drones were used for these purposes, which outside agency requested the flight, how long the flight lasted, the geographic area over which the drone was flown, and information about the reason for the assistance request or purpose of the flight; and

(3) a copy of the "Concept of Operations for CBP's Predator B Unmanned Aircraft System, FY 2010 Report to Congress" discussed in the [Office of Inspector General] May 2012 Report at p. 7. (referred to as the "CONOPS report")

See Dkt. 27-2, Ex. A.

CBP claims that it began processing EFF's request on July 9, 2012, but EFF argues that CBP failed to respond to the request. Regardless, EFF filed this suit on October 30, 2012, asserting two causes of action under FOIA – one for wrongfully withholding records, and one for wrongfully denying EFF's fee waiver request.

After the lawsuit was filed, the parties conferred multiple times regarding the requests. On January 25, 2013, CBP released the only document responsive to category (1), which is not at issue in these motions. On April 29, 2013, CBP released a redacted copy of the CONOPS report responsive to category (3). As to category (2), EFF agreed to receive the records in the form of portions of Daily Reports to the Office of Air and Marine ("OAM"), which were released in three sets, one covering each of 2010, 2011, and 2012. EFF does not challenge the adequacy of defendant's search for documents.

Portions of the CONOPS report and the OAM Daily Reports were redacted under various FOIA exemptions, but only exemption 7(E) is currently at issue. Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes" when production of those records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." See 5 U.S.C. § 552(b)(7)(E).

United States District Court
For the Northern District of California

1

**DISCUSSION**

2    A.    Legal Standard

3         A party may move for summary judgment on a "claim or defense" or "part of . . . a

4    claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is

5    no genuine dispute as to any material fact and the moving party is entitled to judgment as a

6    matter of law. Id.

7         FOIA cases are typically decided on motions for summary judgment. Defenders of

8    Wildlife v. U.S. Border Patrol, 623 F.Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S.

9    Agency for Int'l Dev., 484 F.Supp. 2d 68, 73 (D.D.C. 2007). Because FOIA cases rarely

10   involve issues of disputed fact, the court need not utilize the typical summary judgment

11   standard. Yonemoto v. Department of Veterans Affairs, 686 F.3d 681, 688 (9th Cir. 2012);

12   Minier v. Central Intelligence Agency, 88 F.3d 796, 800 (9th Cir. 1996). Instead, the court

13   conducts a two-step inquiry.

14        First, the court weighs whether the agency has established that it fully discharged its

15   obligations under FOIA. Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985). An agency

16   can establish this by showing that it conducted a search reasonably calculated to uncover

17   all relevant documents. Id.; Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1350-51

18   (D.C. Cir. 1983).

19        If the agency has met this burden, the court next considers whether the agency has

20   shown that any information not disclosed falls within one of the nine FOIA Exemptions. 5

21   U.S.C. § 552(a)(4)(B); U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991) ("The burden

22   remains with the agency when it seeks to justify the redaction of identifying information in a

23   particular document as well as when it seems to withhold an entire document."); see also

24   Dobronski v. FCC, 17 F.3d 275, 277 (9th Cir. 1994).

25        "A basic policy of FOIA is to ensure that Congress and not administrative agencies

26   determines what information is confidential." Lessner v. U.S. Dep't of Commerce, 827 F.2d

27   1333, 1335 (9th Cir. 1987). For this reason, the Ninth Circuit has observed, "we do not

28   give deference to [a federal agency's] determination that the requested information" falls

3

United States District Court

For the Northern District of California

1  under a particular FOIA Exemption.  Carlson v. U.S. Postal Serv., 504 F.3d 1123, 1127 (9th

2  Cir. 2007).

3      Thus, to prevail on a summary judgment motion in a FOIA proceeding, where the

4  underlying facts and possible inferences are construed in favor of a FOIA requester, an

5  agency must prove that it has adequately searched for documents and that any withheld

6  documents information fall within an exemption.  In this case, plaintiff does not challenge

7  the adequacy of defendant's search, so the only issue left for the court is whether the

8  redacted information was properly withheld under exemption 7(E).

9  B.    Legal Analysis

10     As explained above, the only FOIA exemption relevant to these motions is

11  exemption 7(E), which protects from disclosure records or information compiled for law

12  enforcement purposes when production of those records:

13          would disclose techniques and procedures for law enforcement investigations
            or prosecutions, or would disclose guidelines for law enforcement
14          investigations or prosecutions if such disclosure could reasonably be
            expected to risk circumvention of the law.
15  5 U.S.C. § 552(b)(7)(E).

16     As a threshold matter, the parties have competing interpretations of this exemption's

17  scope.  DHS argues that the exemption applies either (1) when production would disclose

18  techniques and procedures for law enforcement investigations or procedures (regardless of

19  whether disclosure could reasonably be expected to risk circumvention of the law), or (2)

20  when production would disclose guidelines for law enforcement investigations or

21  prosecutions if such disclosure could reasonably be expected to risk circumvention of the

22  law.  DHS refers to this interpretation as providing "categorical protection" for techniques

23  and procedures.  EFF, in contrast, argues that the "reasonably be expected to risk

24  circumvention of the law" requirement actually applies to both parts of exemption 7(E) – in

25  other words, in EFF's view, the exemption applies either (1) when production would

26  disclose techniques and procedures for law enforcement investigations or procedures, if

27  such disclosure could reasonably be expected to risk circumvention of the law, or (2) when

28  production would disclose guidelines for law enforcement investigations or prosecutions if

4

United States District Court

For the Northern District of California

1  such disclosure could reasonably be expected to risk circumvention of the law.  The Ninth

2  Circuit has not spoken on the issue, and other courts are split.  See, e.g., Davin v. Dept. of

3  Justice, 60 F.3d 1043, 1064 (3rd Cir. 1995) (requiring government to show risk of

4  circumvention of the law even under the "techniques and procedures" prong); Keys v. DHS,

5  510 F.Supp.2d 121, 129 (D.D.C. 2007) (holding that techniques and procedures are

6  entitled to categorical protection).

7       Having reviewed the cases cited by the parties, the court is persuaded by the view

8  articulated by the Second Circuit in Lowenstein v. DHS, 626 F.3d 678, 681 (2nd Cir. 2010).

9  The Lowenstein court analyzed the exemption as follows:

10      The sentence structure of Exemption (b)(7)(E) indicates that the qualifying
        phrase ("if such disclosure could reasonably be expected to risk
11      circumvention of the law") modifies only "guidelines" and not "techniques and
        procedures."  This is because the two alternative clauses that make up
12      Exemption 7(E) are separated by a comma, whereas the modifying condition
        at the end of the second clause is not separated from its reference by
13      anything at all.  Thus, basic rules of grammar and punctuation dictate that the
        qualifying phrase modifies only the immediately antecedent "guidelines" and
14      not the more remote "techniques and procedures."

15  626 F.3d at 681.

16      The court further agrees with the Lowenstein court's observation that the "history of

17  the statute's amendments" resolves any lingering "ambiguity in the statute's plain meaning."

18  Id.  As originally drafted, the second clause (covering "guidelines") did not exist, and the

19  exemption protected only "investigatory records compiled for law enforcement purposes" to

20  the extent that their production would "disclose investigative techniques and procedures,"

21  without further qualification.  Id. (citing 5 U.S.C. § 552(b)(7)(E) (1976)).  Congress then

22  added the "guidelines" clause, with the qualifier that "guidelines" were protected only if the

23  production of those guidelines would risk circumvention of the law.  As the Lowenstein

24  court held, the fact that the "risk circumvention of the law" clause was not part of the

25  original exemption suggests that no such qualification applies to the "techniques and

26  procedures" prong, and instead, "techniques and procedures" are entitled to categorical

27  protection.

28      That said, while the court is persuaded by Lowenstein's analysis of exemption 7(E),

5

United States District Court

For the Northern District of California

1   it finds that the issue is not dispositive in this specific case, for the reasons described

2   below.  See also Asian Law Caucus v. DHS, 2008 WL 5047839, at *3 (N.D. Cal. Nov. 24,

3   2008) (finding that the court "need not take a side in this debate because, even under the

4   interpretation that applies the 'circumvention' phrase to all of exemption 7(E), defendant

5   carried its burden to justify non-disclosure.").

6        Having established the scope of the exemption, the court now turns to the actual

7   withholdings made by CBP.  As discussed above, there are two categories of documents

8   relevant to this motion: the OAM Daily Reports and the CONOPS report.  The court will first

9   address the OAM Daily Reports.

10       1.    OAM Daily Reports

11       The parties use different methods of categorizing the withholdings made from the

12  Daily Reports.  CBP groups them into the following five categories: (1) location of

13  operation, (2) map of location of operation, (3) supporting agency when the name is also

14  the location of operation, (4) type of operation, and (5) operational capabilities.  EFF groups

15  the withholdings into only two categories: (1) location-based information, and (2)

16  operational information.  It appears that EFF's "location-based information" group

17  corresponds to categories (1), (2), and (3) under CBP's rubric (i.e., location of operation,

18  map of location of operation, and supporting agency when the name is also the location of

19  operation), while EFF's "operational information" group corresponds to CBP categories (4)

20  and (5) (i.e., type of operation and operational capabilities).  In this order, the court will use

21  EFF's method of categorizing the withholdings.

22       Regarding the location-based information, EFF challenges CBP's withholdings on

23  two grounds.  First, EFF argues that the information is "not so precise that releasing it

24  would allow a criminal to know that he was under investigation and that there is a

25  corresponding risk of circumvention of the law."  EFF misstates the relevant standard here,

26  which does not require defendant to show that release would allow a criminal to know that

27  he was under investigation, and instead, merely requires that release would disclose law

28  enforcement techniques and procedures, or that it would disclose law enforcement

6

United States District Court

For the Northern District of California

1    guidelines and would risk circumvention of the law.  Defendant argues that releasing the

2    information would reveal where OAM has clearance to fly and the frequency with which

3    operations are conducted in a given area.  EFF focuses on the example of redacted county

4    names, and argues that many counties in Arizona are extremely large, such that the

5    disclosure of a county of operation would not reveal the specific location of operation.  EFF

6    further argues that "it is well known that there is a significant amount of criminal activity" in

7    Arizona, and thus argues that "[g]iven the size and populations of these counties and their

8    high crime rates, it is hard to imagine that releasing location information such as county

9    names – or releasing other location information withheld in this case – would allow

10   suspected criminals in the area to link CBP's drone activity to their particular criminal

11   activity."

12        There are multiple problems with EFF's argument.  First, the court has interpreted

13   exemption 7(E) to provide categorical protection to law enforcement techniques and

14   procedures, without any need to show that disclosure would risk circumvention of the law.

15   The location of CBP's drone operations do qualify as "techniques and procedures," and

16   thus are entitled to the exemption's protections without any further showing.

17        But even if the court were to require defendant to show risk of circumvention of the

18   law, the court finds that defendant has done so.  Its declaration states that "[r]eleasing the

19   geographic location of the operation would show where OAM has clearance to fly and one

20   could deduce which areas OAM does not have clearance to fly or does not operate," which

21   would risk circumvention of the law in those areas.  See Dkt. 27-3 at 2.  Defendant further

22   argues that release of its location-based information would "show the frequency throughout

23   the year that the UAS operates in a given geographic location," which would also risk

24   circumvention of the law.  Id. at 3.

25        EFF attempts to undermine defendant's showing by arguing that the withheld

26   information is not "so precise" that release would risk circumvention of the law.  However, in

27   making its argument, EFF cherry-picks examples that best support its argument.

28   Specifically, EFF focuses on the fact that defendant has withheld the names of various

United States District Court

For the Northern District of California

county sheriff's departments in Arizona, and argues that counties in Arizona are so large that disclosure of their names would not reveal the specific location of CBP drone operations. But EFF's statistics regarding Arizona county size say nothing about the size of other counties in other states, where disclosure of the county name may indeed be "precise" enough to risk circumvention of the law. And, more importantly, defendant's withholdings are not limited to county names, it has also withheld the specific locations of operations, and maps showing the specific locations of operations. Simply put, EFF has focused on a narrow set of examples where risk of circumvention of the law is at its relative lowest, but looking at the entirety of EFF's request for location-based information, the court finds that disclosing the location of drone operations would reveal where drone efforts are focused, and therefore would disclose law enforcement techniques and procedures (and would risk circumvention of the law, if the court were to impose such a requirement). Specifically, if the targets of drone operations knew where the operations were likely to be conducted, they could avoid those areas and increase the likelihood of evading detection.

EFF also argues that exemption 7(E) does not apply if the information is "generally known to the public." See Rosenfeld v. Dept. of Justice, 57 F.3d 803, 815 (9th Cir. 1995) ("It would not serve the purposes of FOIA to allow the government to withhold information to keep secret an investigative technique that is routine and generally known."). EFF first argues that it is "well known that there is a significant amount of criminal activity" in the Southwest border region, and thus, any release of information would not risk any further circumvention of the law. The court rejects this argument, because even though the high crime rate may be generally known, the specific locations of CBP drone operations are not generally known. EFF then argues that some drones "appear to be visible from the ground, suggesting people have knowledge that a drone is conducting surveillance in the area." For support, EFF cites to two YouTube links showing "drone sightings." See Dkt. 28 at 12, n. 48. This argument is far too attenuated to show that the locations of drone operations are "generally known." EFF establishes only that some drones may be visible in some instances – which does not come close to establishing that the locations of all CBP drone

1    operations (for which disclosure is sought) are "generally known."

2         Finally, EFF argues that other agencies have released location-based information,

3    but it appears that only piecemeal disclosures have been made (from, for instance, the

4    Texas Department of Public Safety and the Miami-Dade Police Department, each of which

5    presumably have access to only a subset of the information available to DHS); and tellingly,

6    EFF identifies only voluntary disclosures and does not provide any authority establishing

7    that location-based information is not protectable under exemption 7(E).

8         Thus, the court finds that defendant has adequately shown that location-based

9    information from the OAM Daily Reports was properly withheld under FOIA exemption 7(E).

10        Turning to operational information, EFF initially did not dispute that disclosure would

11   disclose law enforcement techniques/procedures/guidelines, nor did it dispute that

12   disclosure would risk circumvention of the law.  Instead, in its cross-motion, EFF hinged its

13   argument on the "generally known" test from Rosenfeld.  EFF argues that "many

14   operational capabilities and vulnerabilities of Predator drone surveillance and of Border

15   Patrol in general are already widely known," and cites a number of sources, including the

16   website of a drone manufacturer, Wikipedia, Congressional testimony, CBP documents

17   released in response to other FOIA requests, and various news articles.  See Dkt. 28 at 13-

18   15.

19        Defendant responds by arguing that the supplemental Eckardt declaration (attached

20   to defendant's reply) specifically states that the information withheld is "not generally known

21   to the public or, if some tactics, techniques or procedures are generally known, the

22   information withheld from the plaintiff contains more detailed information and/or analysis

23   than has been previously released."  See Dkt. 29-1 at 1.  While this language could be

24   viewed as conclusory, the court recognizes that defendant is put in the position of having to

25   prove a negative.  While it is true that defendant bears the burden of establishing that the

26   information sought is not generally known, it must be able to satisfy that burden by

27   providing a sworn declaration affirming as such, because any other alternative would

28   involve revealing the very information that defendant seeks to protect (which would have

9

United States District Court

For the Northern District of California

1   the effect of waiving the exemption).  In short, absent any evidence from EFF contradicting

2   the supplemental Eckardt declaration, the court is inclined to find that defendant has indeed

3   satisfied its burden to establish that the requested operational information is not generally

4   known.

5        EFF does attempt to contradict the Eckardt declaration by showing that certain

6   aspects of drone operations are generally known.  Specifically, EFF cites a report

7   discussing the effect of weather on drone operations, and a statement to Congress that

8   drones sometimes have trouble distinguishing humans from animals and even more trouble

9   distinguishing citizens from non-citizens.  See Dkt. 28 at 13-15.  EFF uses this evidence to

10  draw the conclusion that "information about Predator drones' operational capabilities and

11  vulnerabilities is already widely known."  However, while EFF does succeed at showing that

12  some aspects of drone operations are generally known, it does not succeed in showing

13  anything more than that.  Just because some piecemeal facts regarding drones' operation

14  may be known, that does not mean that defendant is obligated to disclose all information

15  about drone operations.

16       Here, the court finds persuasive the approach taken in Asian Law Caucus, where

17  the court held that "[k]nowing about the general existence of government watchlists does

18  not make further detailed information about the watchlists routine and generally known."

19  2008 WL 5047839 at *4; see also Bowen v. FDA, 925 F.2d 1225, 1228-29 (9th Cir. 1991);

20  EFF v. Dept. of Defense, 2012 WL 4364532, at *4 (N.D. Cal. Sept. 24, 2012) ("the

21  government may withhold detailed information regarding a publicly known technique where

22  the public disclosure did not provide 'a technical analysis of the techniques and procedures

23  used to conduct law enforcement investigations.'").  Similarly, while some capabilities of

24  drones may be known, that does not make further detailed information about drones

25  routine and generally known.

26       In its reply, EFF admits that the already-disclosed information "may not necessarily

27  be exactly the same as the information CBP continues to withhold," but attempts to re-

28  insert arguments regarding the applicability of exemption 7(E) in the first instance, arguing

10

United States District Court

For the Northern District of California

1   that the release of that limited subset of information "shows that release of similar

2   information has not created any risk of circumvention of the law."  The court finds this

3   argument problematic.  First, EFF makes this argument (that release of operational

4   information does not risk circumvention of the law) for the first time in its reply brief, thereby

5   depriving DHS of an opportunity to respond.  But because DHS did address this argument

6   in its opening motion (arguing that disclosure would reveal the vulnerabilities of drone

7   operations, and thus would allow targets to exploit those vulnerabilities), the court does find

8   it appropriate to consider the argument.  However, the court finds that EFF's reasoning is

9   circular – it assumes that the release of the already-known information has not actually

10  increased the risk of circumvention of the law, without providing any basis for that

11  assumption.  The court has no way of determining whether the risk of circumvention would

12  be lower if the already-released information had not been made public.  In other words, it is

13  possible that the limited knowledge about drones that is publicly available actually has

14  increased the risk of circumvention.

15      Regardless of the deficiencies in EFF's argument, the burden remains with

16  defendant to establish that exemption 7(E) applies.  Defendant provides a sworn

17  declaration stating that releasing information regarding the drones' operational capabilities

18  and vulnerabilities would disclose its techniques and procedures for law enforcement

19  investigations or prosecutions, and that disclosure would risk circumvention of the law by

20  allowing persons to exploit the drones' vulnerabilities.  See Dkt. 27-3 at 5.  The court

21  agrees that release of the information would disclose law enforcement techniques and

22  procedures, and separately finds that release of the information would risk circumvention of

23  the law; thus, under either interpretation of exemption 7(E), defendant has met its burden to

24  show that the exemption applies.  And because the court has already rejected EFF's

25  "generally known" argument (and indeed, EFF concedes that the sought-after information

26  "may not necessarily be exactly the same as the information CBP continues to withhold"),

27  the court finds that defendant has adequately shown that operational-based information

28  was properly withheld from the OAM Daily Reports under FOIA exemption 7(E).  The court

11

United States District Court
For the Northern District of California

1 │ separately notes that EFF has chosen to group together all "operational information" under

2 │ one heading, and does not separately challenge the "type of operation" and "operational

3 │ capabilities" categories of withholdings.  As a result, EFF has not provided the court with

4 │ any basis for drawing a distinction between the "type of operation" and "operational

5 │ capabilities" withholdings.

6 │        In sum, with regard to the OAM Daily Reports, the court GRANTS defendant's

7 │ motion for summary judgment and DENIES plaintiff's cross-motion for summary judgment.

8 │        2.     CONOPS report

9 │        Next, the court will address CBP's withholdings from the CONOPS report.  Again, all

10 │ of CBP's challenged redactions fall under exemption 7(E).  EFF makes two challenges to

11 │ the withholdings themselves: (1) that defendant has not shown that the information is not

12 │ generally known, and (2) that the information is not "so specific that its release would

13 │ present a reasonable risk of circumvention of the law."  In addition to challenging the

14 │ withholdings themselves, EFF separately argues that defendant has failed to segregate

15 │ and release all non-exempt information from the CONOPS report.  The court will first

16 │ address the basis for the withholdings themselves, and then will discuss the segregation of

17 │ non-exempt information.

18 │        EFF first challenges the applicability of exemption 7(E) to the CONOPS report,

19 │ arguing that defendant has not shown that the withheld information is "so specific that its

20 │ release would present a reasonable risk of circumvention of the law."  As an initial matter,

21 │ the court has already held that defendant need not make such a showing if disclosure of

22 │ the information would disclose law enforcement techniques and procedures, and EFF does

23 │ not dispute that disclosure of the complete CONOPS report would indeed disclose law

24 │ enforcement techniques and procedures.  However, the court will nonetheless address

25 │ EFF's argument in the alternative.

26 │        CBP categorizes its CONOPS report withholdings into eight groups: (1) target list,

27 │ (2) airspace restrictions and operational challenges, (3) map showing airspace restrictions

28 │ and law enforcement techniques, (4) identification of a threat, (5) analysis of a threat, (6)

United States District Court

For the Northern District of California

1    targeting priorities and techniques, (7) UAS capabilities, and (8) gap analysis.  EFF does

2    not use the same rubric, and again categorizes all withholdings into two general categories:

3    location-based information and operational information.  In its reply, EFF does attempt to

4    reconcile these differing categorizations, characterizing CBP category (3) ("map showing

5    airspace restrictions and law enforcement techniques") as part of the "location-based

6    information" group, and placing all other categories into the "operational information" group.

7    See Dkt. 30 at 9.

8           Here, the court's previous analysis (with regard to the OAM Daily Reports) applies

9    with equal force.  As before, defendant argues that release of the location-based

10   information would allow persons to "target their illegal activity in those areas where CBP is

11   not authorized to fly."  EFF only briefly challenges this argument, and instead focuses its

12   argument on showing that the information is already generally known.  However, EFF does

13   argue that "it is unlikely that releasing information on where CBP is authorized to fly its

14   drones would affect actual criminal activity on the ground, in the sea or in the air, because

15   CBP does not rely on drones alone to investigate or interdict illegal activity."  The court

16   finds EFF's logic here to be flawed.  Even if other measures (aside from drones) are used,

17   disclosure of the location of drone operations may still increase the risk of circumvention of

18   the law.  While the use of other measures may indeed dampen the increase in risk, it does

19   not eliminate the risk.  Thus, the court finds that release of location-based information

20   would disclose law enforcement techniques and procedures, and even if defendant were

21   required to show risk of circumvention of the law, defendant would meet that burden as

22   well.  Thus, the court finds that CBP's location-based withholdings do fall within the scope

23   of exemption 7(E).

24          Turning to the withholdings of operational information, defendant argues that the

25   release of operational information would "reveal the specific areas that present difficulty to

26   the agency in detecting criminal activity and the program's vulnerabilities."  EFF does not

27   meaningfully challenge this argument, again focusing its response on the argument that the

28   operational information is already generally known.  The court finds that release of the

United States District Court

For the Northern District of California

1    operational information – which includes CBP's methods for identifying and analyzing

2    threats, as well as drone capabilities and vulnerabilities – would indeed disclose techniques

3    and procedures for law enforcement, thus entitling the information to protection under

4    exemption 7(E).  And even if the court were to require defendant to show that release of

5    the information would risk circumvention of the law, defendant would also meet its burden

6    under that test.  By revealing the criteria used by CBP to assess threats, and the

7    capabilities and vulnerabilities of CBP drones, the information would allow persons to avoid

8    detection and exploit vulnerabilities.  Thus, the court finds that CBP's withholding of

9    operational information does fall within the scope of exemption 7(E).

10         However, even if the withheld information falls within the scope of exemption 7(E)'s

11   language, it may not be exempted from disclosure if the information is generally known.

12   See Rosenfeld, 57 F.3d at 815.  As to location-based information, EFF argues that

13   defendant has already testified before Congress that "its Certificates of Authorization allow

14   it to operate 'from the eastern tip of California, across the land borders of Arizona, New

15   Mexico, and Texas, and into the maritime border just short of the Texas and Louisiana

16   border.'"  See Dkt. 28 at 24.  However, defendant provides a sworn declaration asserting

17   that the map shows more than just airspace restrictions, as it "also shows OAM's

18   management of the airspace in a particular region."  See Dkt. 27-3 at 7.  EFF does not

19   challenge that assertion or present any evidence to contradict it, and as a result, the court

20   finds that defendant has met its burden to show that the location-based information

21   withheld from the CONOPS report is not generally known.  Accordingly, the court finds that

22   location-based information was properly withheld from the CONOPS report under

23   exemption 7(E).

24         Next, as to operational information, EFF relies on the evidence discussed in the

25   context of the Daily Reports, arguing that "CBP has already made much information about

26   its gaps in operational monitoring capabilities available to the public through other reports,

27   news articles, and statements to Congress."  But, again, while EFF succeeds at showing

28   that some aspects of drone operations are generally known, its piecemeal evidence does

14

United States District Court

For the Northern District of California

1   not establish that further detailed information about drones is generally known.  See Asian

2   Law Caucus, 2008 WL 5047839 at *4; see also Bowen v. FDA, 925 F.2d at 1228-29; EFF

3   v. Dept. of Defense, 2012 WL 4364532 at *4.  EFF's evidence does not serve to undermine

4   defendant's sworn declaration that, even if "some tactics, techniques or procedures are

5   generally known, the information withheld from the plaintiff contains more detailed

6   information and/or analysis than has been previously released."  See Dkt. 29-1 at 1.  As a

7   result, the court finds that defendant has met its burden to show that the operational

8   information is not generally known.  Accordingly, the court finds that operational information

9   was properly withheld under exemption 7(E).

10          Having established that defendant's withholdings were properly made under

11   exemption 7(E), the court now turns to EFF's argument that defendant "has failed to

12   segregate and release all non-exempt information from the CONOPS report."  To properly

13   evaluate EFF's argument, the court directed defendant to provide the court with an

14   unredacted copy of the CONOPS report for in camera review.  The court has reviewed the

15   unredacted CONOPS report, and will address the redactions specifically challenged in

16   EFF's motion.

17          First, EFF challenges the redactions on pages 13-14 and 60-61 of the CONOPS

18   report, arguing that those pages are "almost completely redacted."  Page 13 contains a

19   table listing drones' operational capability gaps, and the court finds that the entire page was

20   properly redacted under exemption 7(E).  Page 14 continues the discussion of operational

21   gaps, and the court finds that the withholdings were proper under exemption 7(E).  Pages

22   60 and 61 describe anticipated drone mission scenarios (or "vignettes") and defendant's

23   approach to those scenarios.  This discussion extends to pages 62 and 63.  The court finds

24   that these vignettes are indeed protectable under exemption 7(E).  Page 60 also contains a

25   map of CBP's operational area, and as defendant argued, the map contains information

26   regarding CBP's techniques and procedures for law enforcement.  While the court finds

27   that the map itself discloses the same type of information that was disclosed in the

28   Congressional testimony cited by EFF, the information overlaid on the map does go beyond

United States District Court

For the Northern District of California

1    what is generally known, and the court finds that the map itself is so intertwined with

2    protected material that segregation is not possible.

3         Aside from challenging pages 13-14 and 60-61, plaintiff also challenges the "heavy

4    redactions" on pages 37, 40, 41, 45, 47, 49, 50, 55, 57, 59, 62, and 63.  The court has

5    already discussed pages 62 and 63 above, and it will now address the remaining

6    challenged redactions.

7         Page 37 does not actually contain any redactions.  However, page 38 does, so the

8    court will assume that EFF meant to point to page 38.  The redacted portion of page 38

9    discusses operational challenges facing CBP's use of drones, which the court finds to be

10   properly withheld under exemption 7(E).  The redacted portions of page 40 and 41 similarly

11   discuss vulnerabilities in drone surveillance, which the court also finds to be properly

12   withheld under exemption 7(E).

13        Page 45 (and page 44, which is not specifically mentioned by EFF) mentions more

14   operational challenges facing CBP's use of drones, which the court finds to be properly

15   withheld under exemption 7(E).

16        Page 47 has two sets of redactions.  The first block of redactions consists of a list of

17   operational challenges facing CBP's use of drones, which the court finds to be properly

18   withheld under exemption 7(E).  The second block of redactions includes a discussion of

19   the location of CBP's operations and techniques for dealing with possible illegal activity in

20   these locations.  The court finds that the discussion of law enforcement techniques was

21   properly redacted, however, this redacted paragraph (the last paragraph on page 47) also

22   includes a general discussion of the region, and mostly serves to describe the figure on the

23   following page (Figure 9, on page 48).  Critically, Figure 9 was not redacted, so the court

24   finds no reason to conclude that the description of Figure 9 should be redacted.  Thus, the

25   court finds that the first sentence under the heading "U.S. Southeastern Coast/Northern

26   Carribean" can be segregated from exempt information, and should not have been

27   redacted under exemption 7(E).  Also, even though EFF did not specifically challenge the

28   redactions on page 48, the court similarly finds that the information on that page should not

16

United States District Court

For the Northern District of California

1   have been redacted under exemption 7(E).  Page 48 describes the geographical area

2   depicted in Figure 9, and discusses the history of illegal activity in the region.  No law

3   enforcement techniques, procedures, or guidelines are disclosed.

4       Page 49 contains only a single redacted section, which describes the type of

5   cocaine smuggling operations that are typically found in the U.S. Southeastern Coast and

6   Northern Carribean region.  The redacted information does not disclose any law

7   enforcement techniques, procedures, or guidelines, and instead contains the same type of

8   information contained in the next (unredacted) paragraph – a description of the means

9   typically used by smugglers in the area, without any discussion of defendant's approach for

10  dealing with smugglers.  Accordingly, the court finds that the first paragraph on page 49

11  should not have been redacted under exemption 7(E).

12      Page 50, in contrast, does contain a discussion of defendant's techniques and

13  procedures for its interdiction and counterterrorism operations, which the court finds was

14  properly redacted under exemption 7(E).

15      Page 55 contains two blocks of redactions, both of which cover airspace restrictions

16  limiting drone operations.  The court finds that this information was properly redacted under

17  exemption 7(E).  While EFF did not specifically mention page 56, the court finds that the

18  redacted information on that page is of the same type as the redacted information on page

19  55, and thus finds that it too was properly redacted.

20      Page 57 contains only a single redaction, which discusses airspace restrictions.  The

21  court finds that this information was properly redacted under exemption 7(E).

22      Page 59 contains three redacted paragraphs, all of which discuss drone capabilities.

23  The court finds that this information was properly redacted under exemption 7(E).

24                                    **CONCLUSION**

25      For the foregoing reasons, DHS' motion for summary judgment is GRANTED in part

26  and DENIED in part, and EFF's cross-motion for summary judgment is GRANTED in part

27  and DENIED in part.  DHS is directed to remove the following redactions: (1) the first

28  sentence under the heading "U.S. Southeastern Coast/Northern Carribean" on page 47, (2)

17

the two blocks of redacted text on page 48, and (3) the single block of redacted text on page 49.  A revised copy of the CONOPS report shall be served upon EFF by **April 14, 2014**.

Additionally, as this motion concerned only the cause of action for wrongful withholding, there remains a pending cause of action for the wrongful denial of EFF's fee waiver request.  The parties shall meet and confer and advise the court, in a status statement or stipulation to be filed by **April 28, 2014**, how they wish to proceed as to that cause of action.

Finally, the parties are also directed to address how the unredacted CONOPS report, submitted for in camera review, should be handled going forward.  The parties shall advise the court of their proposal in the April 28, 2014 stipulation.

**IT IS SO ORDERED.**

Dated: March 31, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

18