1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   ELECTRONIC FRONTIER FOUNDATION,
8                Plaintiff,                    No. C 12-5580 PJH
9          v.                                  **ORDER GRANTING MOTION FOR
                                               ATTORNEYS' FEES**
10  DEPARTMENT OF HOMELAND SECURITY,
11               Defendant.
    _____/
12
13          Before the court is the motion of plaintiff Electronic Frontier Foundation ("plaintiff" or
14  "EFF") for attorneys' fees and costs incurred as a result of a civil action brought against
15  defendant Department of Homeland Security ("defendant" or "DHS").  Having carefully
16  reviewed the papers and considered the relevant legal authority, and good cause
17  appearing, the court hereby GRANTS plaintiff's motion as follows.
18                            **BACKGROUND**
19          This case arises under the Freedom of Information Act ("FOIA").  On June 25, 2012,
20  plaintiff made a request to U.S. Customs & Border Protection ("CBP")[1] for documents
21  related to CBP's use of unmanned aircraft systems ("UAS," also referred to as "drones") to
22  assist the operations or activities of other agencies.   Specifically, plaintiff requested the
23  following three categories of information:
24          (1) CBP and/or DHS policies or procedures for responding to requests from
            other agencies (including agencies at the federal, state, and local level) for
25          assistance involving the use of CBP's Predator drones;
26          (2) records or logs of CBP drone flights to assist in any operation or activity of
            another agency (including foreign, federal, state, and local government
27          agencies), including records or logs that detail when the drones were used for
            these purposes, which outside agency requested the flight, how long the flight
28

    _____

    [1]CBP is a component of defendant DHS.

1   lasted, the geographic area over which the drone was flown, and information
2   about the reason for the assistance request or purpose of the flight; and

3   (3) a copy of the "Concept of Operations for CBP's Predator B Unmanned
    Aircraft System, FY 2010 Report to Congress" discussed in the [Office of
    Inspector General] May 2012 Report at p. 7. (referred to as the "CONOPS
4   report")

5   CBP sent a letter to plaintiff acknowledging the request on July 9, 2012, but took no

6   further action.  Plaintiff filed this suit on October 30, 2012, asserting two causes of action

7   under FOIA (one for wrongfully withholding records, and one for wrongfully denying

8   plaintiff's fee waiver request).

9   After the lawsuit was filed, the parties conferred multiple times regarding plaintiff's

10  document requests.  On January 25, 2013, CBP released the only document responsive to

11  category (1).  On April 29, 2013, CBP released a redacted copy of the CONOPS report

12  responsive to category (3).  As to category (2), plaintiff agreed to receive the records in the

13  form of portions of Daily Reports to the Office of Air and Marine ("OAM"), which were

14  released in three sets, one covering each of 2010, 2011, and 2012.

15  After these documents were produced, the parties filed cross-motions for summary

16  judgment.  Plaintiff did not raise any challenge to the category (1) document, and

17  challenged only the category (2) and (3) documents.  Notably, plaintiff did not challenge the

18  adequacy of defendant's search, but challenged only the redactions made from the

19  documents that were produced.  Specifically, plaintiff challenged defendant's redactions

20  under FOIA exemption 7(E), which protects from disclosure "records or information

21  compiled for law enforcement purposes," when production of those records "would disclose

22  techniques and procedures for law enforcement investigations or prosecutions, or would

23  disclose guidelines for law enforcement investigations or prosecutions if such disclosure

24  could reasonably be expected to risk circumvention of the law."

25  In its motion, plaintiff first made the threshold argument that the "could reasonably

26  be expected to risk circumvention of the law" clause applied to all of exemption 7(E), thus

27  modifying both the "techniques and procedures" prong and the "guidelines" prong.

28  Defendant argued that it modified only the "guidelines" prong, and thus argued that

2

1    "techniques and procedures" were entitled to "categorical" protection, without the need to

2    determine whether disclosure could also "reasonably be expected to risk circumvention of

3    the law."  The court agreed with defendant, though it also found the issue to be non-

4    dispositive, because the disclosure of the challenged withholdings could reasonably be

5    expected to risk circumvention of the law, regardless of whether the information constituted

6    "guidelines" or "techniques and procedures."

7           After establishing the scope of the exemption, the court addressed plaintiff's specific

8    challenges to the redactions from the OAM reports.  Plaintiff argued that the redactions did

9    not meet the requirements for exemption 7(E), and further argued that the redacted

10   information was already "generally known," and thus not entitled to protection.  The court

11   rejected both arguments.

12          Plaintiff also challenged specific redactions from the CONOPS report on similar

13   bases.  The court similarly rejected those arguments.

14          Finally, plaintiff argued that the redactions from the CONOPS report did not properly

15   segregate the non-exempt information from the information properly withheld under

16   exemption 7(E).  The court reviewed the unredacted CONOPS report in camera, and

17   determined that, of the 14 redactions challenged by plaintiff, two of them failed to segregate

18   and release the non-exempt information.  The court also found one additional redaction

19   (not challenged by plaintiff) where defendant failed to segregate and release the non-

20   exempt information.  Thus, plaintiff's motion was granted in part and denied in part, and

21   defendant was directed to unredact those three sections.

22          The court's summary judgment order also noted that the parties had failed to

23   address plaintiff's fee waiver claim, and directed them to file a status statement about how

24   they wished to proceed.  Over two months later, the parties submitted a stipulated

25   judgment indicating that defendant had agreed to waive the fees.

26          Plaintiff now brings this motion for attorneys' fees.

27

28

1

**DISCUSSION**

2   A.   Legal Standard

3        FOIA provides that government agencies "shall make available to the public" certain

4   qualifying information, upon proper request.  <u>See</u> 5 U.S.C. § 552(a).  FOIA also allows

5   district courts to exercise jurisdiction over government agencies in order to require

6   compliance with FOIA's disclosure requirements, wherever a requester has properly filed a

7   complaint under FOIA.  <u>See id</u>. at § 552(a)(4)(B).

8        When a plaintiff "substantially prevails" on such a complaint, FOIA empowers the

9   district court to assess "reasonable attorney fees" and reasonably incurred "litigation costs"

10  against the government.  <u>See</u> 5 U.S.C. § 552(a)(4)(E)(i).  Although the FOIA provides for

11  an award of fees and costs, however, it does not mandate recovery of fees in those

12  instances.  Rather, in order to receive an award of fees, a prevailing party in a FOIA action

13  must demonstrate both eligibility for <u>and</u> entitlement to such a recovery.  <u>See, e.g., Church</u>

14  <u>of Scientology of Cal. v. U.S. Postal Serv.</u>, 700 F.2d 486 (9th Cir. 1983); <u>see also Long v.</u>

15  <u>I.R.S.</u>, 932 F.2d 1309, 1313 (9th Cir. 1991).

16       A plaintiff is deemed to be eligible for fees if he has "substantially prevailed" on his

17  complaint, as defined under the statute.  FOIA deems a plaintiff to have "substantially

18  prevailed" if he has "obtained relief through either ... [a] a judicial order, or an enforceable

19  written agreement or consent decree; or [b] a voluntary or unilateral change in position by

20  the agency, if the complainant's claim is not insubstantial."  <u>See</u> 5 U.S.C. § 552(a)(4)(E)(ii).

21       If a plaintiff demonstrates eligibility for fees, the district court may then, in the

22  exercise of its discretion, determine that the plaintiff is entitled to an award of fees and

23  costs.  In exercising its discretion on the question of entitlement to fees, the district court

24  should be guided by the four factor test employed by the Ninth Circuit: (1) the benefit to the

25  public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature

26  of the complainant's interest; and (4) whether the Government's withholding of the records

27  sought had a reasonable basis in law.  <u>See, e.g., Church of Scientology</u> 700 F.2d 486 (9th

28  Cir. 1983); <u>Long</u>, 932 F.2d at 1313.  These four factors are not exhaustive, however, and

1    the court may take into consideration "whatever factors it deems relevant in determining

2    whether an award of attorney's fees is appropriate."  Long, 932 F.2d at 1313.

3        Once a plaintiff has proven both eligibility for and entitlement to fees and costs, the

4    court must award reasonable fees.  Id.  Specifically, the court must scrutinize the

5    reasonableness of (a) the number of hours expended and (b) the hourly fee claimed.  If

6    these two figures are reasonable, then there is a "strong presumption" that the product of

7    these two amounts – i.e., the lodestar amount – represents a reasonable award.  Id.  The

8    court may authorize an upward or downward adjustment from the lodestar figure if certain

9    factors relating to the nature and difficulty of the case overcome this strong presumption

10   and indicate that an adjustment is necessary.  Id.

11   B.    Legal Analysis

12       As explained above, the court's first step is to determine whether plaintiff is "eligible"

13   for a fee award, by having "substantially prevailed" on its complaint, either by obtaining

14   relief through a judicial order or an enforceable written agreement, or by a voluntary or

15   unilateral change in position by the agency, as long as the claim is not insubstantial.

16       The Ninth Circuit has shed additional light on the "substantially prevailed"

17   requirement, explaining that the court should determine (1) whether plaintiff's suit was

18   reasonably necessary to obtain the information, and (2) whether the suit had a substantial

19   causative effect on the release of the documents in question.  Church of Scientology, 700

20   F.2d at 490.  The Ninth Circuit further expanded on the "substantially prevailed"

21   requirement in a more recent case, holding that a plaintiff can recover under a "catalyst

22   theory" if it achieved the desired result through a voluntary change in position of the

23   opposing party, even if the plaintiff did not receive a judgment in its favor.  Oregon Natural

24   Desert Association v. Locke, 572 F.3d 610, 614 (9th Cir. 2009).

25       Overall, the court finds that EFF's lawsuit was indeed a catalyst for the release of the

26   requested information.  EFF's FOIA request was made on June 25, 2012, and on July 9,

27   2012, defendant responded with a letter stating that the request was under review, and that

28   its goal was to respond within 20 days, but also noting that FOIA provided for a 10-day

1   extension.  Defendant also stated that it "may encounter some delay in processing your

2   request."

3        EFF then waited until October 30, 2012 to file suit, and in the intervening period, it

4   does not appear that defendant followed up on the request at all, not even to provide notice

5   to EFF that a response would be delayed.  Although neither party cited the full text of the

6   relevant statute, it reads as follows:

7        Each agency, upon any request for records made under paragraph (1), (2), or
         (3) of this subsection, shall . . . determine within 20 days (excepting
8        Saturdays, Sundays, and legal public holidays) after the receipt of any such
         request whether to comply with such request and shall immediately notify the
9        person making such request of such determination and the reasons therefor,
         and of the right of such person to appeal to the head of the agency any
10       adverse determination.

11  5 U.S.C. § 552(a)(6)(A)(i).

12       In unusual circumstances as specified in this subparagraph, the time limits
         prescribed in either clause (i) or clause (ii) of subparagraph (A) may be
13       extended by written notice to the person making such request setting forth the
         unusual circumstances for such extension and the date on which a
14       determination is expected to be dispatched. No such notice shall specify a
         date that would result in an extension for more than ten working days, except
15       as provided in clause (ii) of this subparagraph.

16  5 U.S.C. § 552(a)(6)(B)(i).

17       Clause (ii), in turn, reads:

18       (ii) With respect to a request for which a written notice under clause (i)
         extends the time limits prescribed under clause (i) of subparagraph (A), the
19       agency shall notify the person making the request if the request cannot be
         processed within the time limit specified in that clause and shall provide the
20       person an opportunity to limit the scope of the request so that it may be
         processed within that time limit or an opportunity to arrange with the agency
21       an alternative time frame for processing the request or a modified request.

22  5 U.S.C. § 552(a)(6)(B)(ii).

23       Defendant argues that its delay was attributable to an "unavoidable" backlog, but

24  does not explain why it failed to provide notice of that backlog to EFF, or why it failed to

25  provide EFF with an opportunity to limit its request to facilitate faster processing.  While

26  defendant is correct that it never expressly refused to produce records, its lack of response

27  for nearly four months certainly suggested that EFF needed to take further action to trigger

28  a response.

1    After the lawsuit was filed, records were produced in just under three months

2    (specifically, on January 25, 2013).  More documents were produced as the year went on,

3    and during most of that time, the parties were engaged in negotiations regarding the

4    documents, as well as regarding a narrowing of the issues in the case and the preparation

5    of cross-motions for summary judgment.

6    Based on the fact that defendant began to release records only after the suit was

7    filed, the court finds that plaintiff's suit was indeed a "catalyst" to the documents' release,

8    and thus, that EFF "substantially prevailed" on its FOIA claim based on defendant's

9    voluntary change in position.  While the court does not agree that EFF "substantially

10   prevailed" on its summary judgment motion, as it obtained only very limited relief, that

11   result relates more to the reasonableness of the fees requested.  The lawsuit's initial effect

12   on spurring defendant to produce documents is sufficient to establish that plaintiff

13   "substantially prevailed" on its first cause of action, for the wrongful withholding of records.

14   However, the court does not find that plaintiff has "substantially prevailed" on its fee

15   waiver claim, for purposes of an attorneys' fee award.  As explained above, a plaintiff can

16   establish that it "substantially prevailed" if it obtains relief through either (1) a judicial order,

17   or an enforceable written agreement or consent decree; or (2) a voluntary or unilateral

18   change in position by the agency, if the complainant's claim is not insubstantial.

19   As to (1), EFF argues that it obtained relief through a judicial order, because the

20   parties submitted a proposed judgment indicating that "defendant has agreed to grant

21   plaintiff's request . . . for a fee waiver," and the court signed that order.  However, the order

22   simply reflects the parties own agreement (i.e., defendant's voluntary change in position),

23   which does not constitute "obtaining relief through a judicial order."  See Dkt. 43.  Nor is the

24   judgment itself an "enforceable written agreement," as the judgment simply confirms the

25   parties own separate agreement.

26   As to (2), while defendant did indeed make a "voluntary or unilateral change in

27    position by the agency," plaintiff's fee waiver claim was "insubstantial," especially as

28   compared to its claim for the wrongful withholding of records.

7

1    Thus, the court finds that plaintiff has not substantially prevailed on its fee waiver

2    claim.  However, because the court has already found that plaintiff substantially prevailed

3    on its claim for the wrongful withholding of records, plaintiff has established that it is eligible

4    for fees.

5    Having established eligibility, the next question is whether plaintiff is entitled to fees.

6    As discussed above, this involves a four-factor inquiry:  (1) the public benefit from

7    disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the

8    nature of the plaintiff's interest in the disclosed records, and (4) whether the government's

9    withholding of records had a reasonable basis in law.

10   Defendant does not challenge (1), and its arguments related to (2) and (3) are based

11   only on the fee waiver claim (which defendant argues serves only EFF's commercial

12   interests).  Defendant does not challenge that the underlying FOIA claim does not create

13   any commercial benefit for EFF, and involves only a non-monetary interest.  Thus, the only

14   dispute relates to factor (4).

15   Defendant points to the fact that the court's summary judgment order upheld the

16   majority of the defendant's withholdings.  However, defendant does not attempt to justify

17   the reasonableness of its failure to produce documents pre-suit, except to argue that it

18   never expressly refused to produce records.  Overall, given that defendant failed to provide

19   any notice of the status of its search between July 2012 and the filing of this suit in late

20   October 2012, and the fact that it started to produce documents only after the suit was filed,

21   the court finds that defendant's initial withholdings lacked a reasonable basis in law.  To be

22   clear, if the court were to look only at the withholdings that were challenged as part of the

23   summary judgment proceedings, defendant would have a stronger argument than plaintiff,

24   as the court upheld nearly all of the challenged withholdings.  And, indeed, the court will

25   consider the reasonableness of defendant's subsequent withholdings when evaluating the

26   "reasonableness" of plaintiff's total fee request.  However, because defendant's initial

27   withholdings lacked a reasonable basis in law, the court does find that plaintiff has

28   demonstrated entitlement to at least some measure of fees.

1    The final step in the court's analysis is to determine whether the amount of fees

2    sought is reasonable.  Here, the court finds significant problems with plaintiff's request for

3    $101,625.25 in fees and costs.

4    First, as discussed above, plaintiff makes no attempt to distinguish the fees incurred

5    in connection with the initial filing of the complaint, versus the fees incurred later in the

6    case, including the fees associated with its largely-unsuccessful motion for summary

7    judgment.

8    Second, even looking only at the cross-motions for summary judgment, plaintiff

9    seeks to recover all fees incurred in connection with the motions, and seemingly fails to

10   acknowledge that nearly all of the arguments made in its motion were rejected by the court.

11   As defendant points out, EFF's motion contained a number of different arguments, and only

12   3.5 out if its 28 pages of briefing were devoted to the argument that defendant failed to

13   segregate non-exempt information.  The rest of the motion dealt with arguments that

14   defendant was not entitled to "categorical protection" of law enforcement techniques and

15   procedures, and thus needed to show that disclosure would risk circumvention of the law,

16   and that the information was already "generally known," and thus not entitled to protection.

17   EFF did not prevail on those arguments, and instead prevailed only on its argument that

18   defendant failed to segregate and release all non-exempt information from the CONOPS

19   report.  And even on that "failure to segregate" argument, EFF challenged 14 sets of

20   redactions, only two of which were found improper by the court (the court also found that

21   one unchallenged redaction failed to segregate non-exempt information).  Thus, the cross-

22   motions for summary judgment were largely a victory for defendant, and EFF's request for

23   all fees associated with that motion strikes the court as unreasonable.

24   EFF makes the separate argument that defendant released a set of documents only

25   after briefing was complete, thus implying that the summary judgment motion was a

26   catalyst for those documents' release.  However, other than timing, there is no indication

27   that the documents' release was connected to the summary judgment motion, especially

28   since plaintiff's motion did not seek the release of _any_ additional documents, and instead,

1    only challenged redactions made to documents that had already been released.  As noted

2    in the court's summary judgment order, and in plaintiff's own cross-motion for summary

3    judgment, "EFF does not challenge the adequacy of defendant's search for documents."

4    See Dkt. 36 at 2; Dkt. 28 at 15.

5            Overall, the court finds that the vast majority of the relief obtained by plaintiff came in

6    response to the filing of the complaint itself, and were unrelated to the subsequent

7    proceedings.  The court also notes that plaintiff prevailed on only a small portion of the

8    arguments that it raised in its summary judgment motion.  The court will thus downwardly

9    adjust the amount requested by plaintiff, to account for the limited nature of plaintiff's

10   success in this specific case, and the reasonableness of the hours expended subsequent

11   to the filing of the complaint.

12           The attorney declarations submitted by plaintiff's counsel indicate that they incurred

13   $3,643.75 in fees in connection with the filing of the complaint.  See Dkt. 42-1, ¶ 12 (Lynch

14   declaration); Dkt. 42-2, ¶ 9 (Sobel declaration).  Plaintiff further indicates that it incurred

15   $470 in secretarial fees in connection with the filing of the complaint.  See Dkt. 42-1, Ex. C.

16   The remaining $97,075.50 in fees were incurred in connection with (1) negotiations with

17   defendant regarding the documents that were produced (the court notes that plaintiff would

18   have spent this time even if defendant had timely responded to plaintiff's FOIA request,

19   before the filing of the lawsuit), (2) drafting and litigating the cross-motions for summary

20   judgment, and (3) drafting and litigating this motion for attorneys' fees.  The court notes that

21   nearly half of this amount ($42,796.00 out of $97,075.50)[2] was incurred as part of the  fee

22   motion itself, which indicates to the court that an unreasonable amount of hours were

23   expended in connection with this motion, and creates the appearance of the attorneys' fees

24   tail wagging the FOIA dog.

25   _____

26        [2]See Dkt. 42-1, Ex. A ($22,842.00 incurred by attorney Lynch in connection with
     fee motion); Dkt. 42-2, ¶ 9 ($1,230 incurred by attorney Sobel in connection with
27   fee motion); Dkt. 42-1, Ex. B ($650 incurred by legal intern Richardson in
     connection with fee motion); Dkt. 42-1, Ex. C ($250 incurred by legal secretary
28   Mulkern in connection with fee motion); Dkt. 45 at 19 ($17,824 incurred by
     plaintiff's counsel, interns, and secretaries in connection with reply papers).

1    Overall, to account for the fact that nearly all of the relief obtained in this case came

2  as a result of the mere filing of the complaint, and the fact that plaintiff prevailed on only a

3  small fraction of the arguments it presented at summary judgment, the court finds that an

4  award of **$7,500** in fees to be reasonable.  The court will also award the full **$436** requested

5  in costs.

6  ## CONCLUSION

7    For the reasons set forth above, plaintiffs' motion for award of fees and costs is

8  GRANTED in the amount of **$7,500.00** in fees and **$436.00** in costs, for a total award of

9  **$7,936.00**.

10   **IT IS SO ORDERED**.

11
12  Dated: November 18, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11